**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **Case No. 23-CR-292 (CKK)** |
| | : | |
| **MARQUETTE JACKSON,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, hereby, submits this memorandum in support of its recommendation for the sentencing of the defendant.

**I.      Introduction**

The parties have agreed that the defendant should be sentence to 188 months' incarceration. Based on the applicable sentencing factors, the Court should impose the agreed upon sentence.

**II.      Procedural Posture**

On May 21, 2025, defendant pleaded guilty, pursuant to Fed. R. Crim. P. 11(c)(1)(C), to Count Two of the Second Superseding Indictment [ECF No. 103], charging him with: Kidnapping and Aiding and Abetting, in violation of 18 U.S.C. §§ 1201(a)(1) and 2.

**III.      Defendant's Criminal Conduct**

On June 8, 2023, at approximately 11:44 pm, the defendant (Marquette Jackson), DeAngelo Beale (hereafter, "Victim-1"), L.H. (hereafter, "Victim-2"), and others departed the area of the 4400 block of F Street SE, Washington, D.C.   At approximately 12:09 pm, they arrived at the Saint Yves nightclub, located at 1220 Connecticut Avenue NW, Washington, D.C. for a birthday celebration.

The defendant and others returned from the nightclub to the 4400 block of F Street SE around 2:21 am on June 9, 2023.   Victims-1 and -2 had not yet returned to the area.

At approximately 2:33 am, the defendant and others searched Victim-1's black Mercedes SUV, which was parked on the north side of the street in the 4400 block of F Street SE.   They ultimately stole a backpack and a duffel bag from the vehicle.

The victims returned to the 4400 block of F Street SE at approximately 3:03 a.m.

At 3:43 am, the kidnapping of Victim-1 began for the purpose of stealing Victim-1's clothing, money, vehicle, and other belongings.   While Victim-1 occupied the driver's side of his Mercedes SUV, another individual lunged towards Victim-1 from the driver's-side doorway as the defendant and others pushed forward to assist in confining Victim-1.

The defendant and others enclosed Victim-1 from the driver's-side doorway, restricted Victim-1's movements, and commenced removing Victim-1's clothing from his body.

Around 3:45 am, the defendant and others ripped Victim-1 from the driver's seat of the Mercedes SUV.   The defendant assisted in preventing Victim-1 from fleeing.   The defendant opened the rear, driver-side door of the Mercedes SUV, allowing others to push Victim-1 into the back of the vehicle, where Victim-1 was confined.

Five individuals entered Victim-1's Mercedes SUV and fled, carrying Victims-1 and -2 away from the scene.   The defendant and three others likewise ran into a nearby white Nissan Altima and fled the scene.

The defendant and others transported Victim-1 and Victim-2 to a nearby area, where the defendant and others demanded information regarding residences associated with Victim-1. Victims-1 and -2 were threatened and assaulted, including at gunpoint, resulting in injuries to both

victims that involved extreme physical pain and required hospitalization.

The defendant and others then transported Victim-1 across state lines from the District of Columbia, where the kidnapping commenced, to Maryland. At approximately 4:39 a.m., the Mercedes SUV and Nissan Altima entered an apartment complex located at 5200 Belgreen Street, Suitland, Maryland, where Victim-1 maintained an apartment ("Residence-1"). Surveillance shows the defendant and at least four others exiting both vehicles and advancing towards Residence-1, which they ultimately burgled.

At approximately 5:39 am, the Mercedes SUV arrived at another residence linked to Victim-1 in Waldorf, Maryland ("Residence-2"). Surveillance and other evidence show that four individuals exited the Mercedes SUV at various times to aid in commission of an armed robbery of Residence-2 and the occupant therein. At the time, some of the subjects restrained Victim-1 in his Mercedes SUV in the parking lot outside.

At approximately 5:43 am, surveillance footage shows at least three individuals engaging in a shootout with Victim-1, resulting in Victim-1 and another individual getting struck by gunfire. Both were ultimately pronounced dead.

Around 6:45 a.m., the Nissan Altima was captured on surveillance at the intersection of Kayak Avenue and Emo Street in Capitol Heights, Maryland. Soon thereafter, first responders arrived at 819 Kayak Street, where they found Victim-1's Mercedes SUV engulfed in flames.

On August 31, 2023, law enforcement searched one of the defendant's residences, 8313 Telegraph Road, Apartment 156, Odenton, Maryland, pursuant to a lawful search warrant. There, among other evidence, law enforcement found a Glock 42 firearm bearing serial number ADBC457, multiple firearm magazines, and various amounts and calibers of ammunition.

3

On January 31, 2024, when the defendant was arrested in connection with this matter, his residence at 4916 Nash Street NE Apartment 5 in Washington, D.C. was searched pursuant to a lawful search warrant. There, law enforcement recovered a Glock 22C .40 caliber firearm equipped with a machine gun conversion device.

## IV.    Statutory Penalties

The penalties for Count Two, Kidnapping and Aiding and Abetting, are as follows:

1.    A maximum term of imprisonment of life imprisonment;
2.    A fine not to exceed $250,000, or twice the pecuniary gain or loss of the offense;
3.    Mandatory restitution;
4.    A term of supervised release of not more than 5 years; and
5.    A special assessment of $100.

18 U.S.C. §§ 1201(a)(1).

## V.    Sentencing Guidelines Calculation

The Supreme Court has instructed that the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 45 (2007). "As a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. As "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," the Guidelines are the "starting point and the initial benchmark" for sentencing. *Id.* at 46; *Khatallah*, 41 F.4th at 644 (same).

The Probation Office agrees with the parties' Guidelines' calculation:

| U.S.S.G. § 2A4.1 | Base Offense Level | 32 |
|---|---|---|
| U.S.S.G. § 2A4.1(b)(2)(B) | Serious bodily injury | +2 |
| U.S.S.G. § 2A4.1(b)(3) | Use of a Dangerous Weapon | +2 |

4

| | | Total | 36 |
|---|---|---|---|
| U.S.S.G. §§3E1.1(a)(b) | Acceptance of Responsibility | | -3 |
| | | Total | 33 |

The defendant has a Criminal History Category II, which results in a Guidelines' Sentencing Range of 151to 188 months. PSR at ¶ 111. Pursuant to the plea agreement, the parties agreed that a sentence of 188 months' incarceration is the appropriate sentence in this matter. ECF # 139.

## VI.    The Section 3553(a) sentencing factors support the imposition of the agreed upon sentence.

The Court should next consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49-50. That Section provides that the Court consider the following: (1) "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1); (2) "the history and characteristics of the defendant," *id.*; (3) the promotion of "respect for the law," 18 U.S.C. § 3553(a)(2)(A); (4) general and specific "deterrence," 18 U.S.C. § 3553(a)(2)(B)(C); (5) the Guidelines and Guideline range, § 3553(a)(4); and (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). As demonstrated below, each of these sentencing factors supports the imposition of the agreed upon sentence.

### A.    The Nature and Circumstances of the Offenses

The defendant has pleaded guilty to a grave offense. He participated in the kidnapping of two individuals, which led to the death of one. Additionally, the defendant is linked to two firearms, one of which was equipped with a machine gun conversion device.

### B.    The History and Characteristics of the Defendant

Defendant reported having had a "'great'" upbringing; being raised by his father and grandparents; and doing well in school. *Id.* at 86-87. Despite this, defendant has not been gainfully employed (*id.* at ¶ 103) and has an extensive criminal history to include a conviction for Third Degree Sex Abuse – Force. *Id.* ¶ 72.

## C.    Promotion of respect for the law

The gravity of the defendant's crime requires the imposition of the agreed upon sentence to promote respect for the law. *See, e.g., Gall*, 552 U.S. at 54 (recognizing that "a lenient sentence for a serious offense threatens to promote disrespect for the law").

## D.    General and Specific Deterrence

The agreed upon sentence – a significant period of incarceration would provide both general deterrence by deterring others from engaging in similar grave criminal conduct and would also specifically deter the defendant.

## E.    A Guidelines sentence is appropriate.

Analysis of the Section 3553(a) factors demonstrates that the agreed upon Guidelines sentence is appropriate in this case.

## F.    Unwarranted sentencing disparities

As the D.C. Circuit has stated: "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Alford*, 89 F.4th 943, 953 (D.C. Cir. 2024) (citation and internal quotation omitted); *see also United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023) (same).

**VII.    The Court should impose the agreed upon sentence.**

Here, the sentencing factors call for the imposition of the agreed upon sentence, which is at the top of the Guidelines Sentencing calculation.   While a "sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," *Rita* 551 U.S. at 351, and it "may not presume that the Guidelines range is reasonable," *Gall*, 552 U.S. at 50; *Nelson v. United States*, 555 U.S. 350, 350 (2009), "even in an advisory capacity the Guidelines serve as 'a meaningful benchmark' in the initial determination of a sentence and 'through the process of appellate review.'"   *Rosales-Mireles v. United States*, 585 U.S. 129, 133 (2018).

The advisory Guidelines sentencing range should, therefore, be given considerable weight. First, the Guidelines range is itself a § 3553(a) factor:   "The fact that § 3553(a)[(4)] explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."   *Gall*, 552 U.S. at 50, n.6.   Second, one of the Sentencing Commission's purposes in promulgating the Guidelines was to "assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2)."   28 U.S.C. §§ 991(b)(1)(A), 994(f).   The Commission wrote the Guidelines to "carry out these same § 3553(a) objectives," resulting in "a set of Guidelines that seek to embody the § 3553(a) considerations, both in principle and in practice." *Rita*, 551 U.S. 338, 350.

Moreover, "[t]he Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."

7

*Rita*, 551 U.S. at 349.   As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'"   *Kimbrough v. United States*, 552 U.S. 85, 96 (2007); 28 U.S.C. § 994(m).   In so doing, the Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108.   As the Third Circuit has stressed:

> The Sentencing Guidelines are based on the United States Sentencing Commission's in-depth research into prior sentences, presentence investigations, probation and parole office statistics, and other data. U.S.S.G. § 1A1.1, intro, comment 3.   More importantly, the Guidelines reflect Congress's determination of potential punishments, as set forth in statutes, and Congress's on-going approval of Guidelines sentencing, through oversight of the Guidelines revision process.   *See* 28 U.S.C. § 994(p) (providing for Congressional oversight of amendments to the Guidelines).   Because the Guidelines reflect the collected wisdom of various institutions, they deserve careful consideration in each case.   Because they have been produced at Congress's direction, they cannot be ignored.

*United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2005).   "[W]here judge and Commission both determine that the Guidelines sentences is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its 'not greater than necessary' requirement)," and that significantly increases the likelihood that the sentence is a reasonable one." *Rita*, 551 U.S. at 347.   In other words, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 552 U.S. at 89.

## VIII.    Conclusion

Based on the gravity of the offense of conviction and the defendant's criminal history and circumstances, the Court should impose the agreed upon sentence.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY


_____
John Crabb Jr.
N.Y. Bar No. 2367670
Anthony Scarpelli
D.C. Bar No. 474711
601 D Street, N.W.
Washington, D.C. 20530
john.d.crabb@usdoj.gov
Anthony.scarpelli@usdoj.gov
(202) 252-1794 (Crabb)
(202) 252-7707 (Scarpelli)